```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF ILLINOIS
             EASTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03 C 3644 ) |
| **Funds in the Amount of One Hundred Thousand and One Hundred and Twenty Dollars ($100,120.00),** | ) ) ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Claimants Nicholas Marrocco ("Marrocco") and Vincent Fallon ("Fallon") have filed a motion for determination of ownership of $100,120.00, the *res* at issue in this case. Marrocco and Fallon contend that Marrocco is the true owner of the *res* at issue in this action, and that Fallon has a lawful possessory interest in the *res*. The government has filed a response contending that the evidence demonstrates that the funds at issue were involved in drug trafficking, so that the government has the true claim of ownership. For the following reasons, I determine ownership belongs to Marrocco.

I.

As explained in my prior rulings, this case is a forfeiture action brought by the government under 21 U.S.C. § 881(a)(6) (2007). The complaint, filed in 2003, alleges that the *res* is

subject to forfeiture because it is connected to narcotics trafficking. These allegations are based on evidence the government obtained when the Chicago Drug Enforcement Agency Narcotic Transportation Task Force Group (the "task force") seized a briefcase containing the *res* from Fallon at Union Station in Chicago. Fallon and Marrocco filed a motion to suppress evidence and to quash the seizure of the *res*, contending that the seizure was illegal. At a hearing on the motion to suppress the parties raised the issue of Fallon and Marrocco's standing to bring their motion to suppress. At that time the government contended that Marrocco had no standing to bring the motion to suppress because the Fourth Amendment does not allow claims that "the search of another individual was illegal." (Tr. of Proceedings Apr. 22, 2004 at 2-3.) Marrocco's counsel offered no disagreement to the government's contention. However, at the evidentiary hearing the present counsel for claimants identified himself as representing both claimants. (Tr. of Proceedings, Apr. 26, 2004, at 2.) Both claimants attending the evidentiary hearing. (*Id.*)

After an evidentiary hearing on the motion to suppress I held that, although the task force lawfully detained the *res* while it conducted further investigation, the task force lacked the requisite probable cause and warrant to open the briefcase. *See United States v. Funds in the Amount of One Hundred Thousand and One Hundred and Twenty Dollars ($100,120.00)*, 361 F. Supp 2d. 757, 761 (N.D. Ill. 2005) (hereinafter "*Funds I*"). I consequently granted the motion to suppress the seizure of the *res*. In granting

the motion I made the following factual findings: on the day of the seizure, December 6, 2002, police officer Eric Romano ("Romano") searched records of passengers leaving Union Station and discovered that Fallon had purchased a one-way train ticket to Seattle within 72 hours of the time the train was to depart. *Id.* at 758. He and another task force agent then approached the train at the time it was boarding and, after determining Fallon had boarded, approached his train compartment and spoke to him. *Id.* at 759. The officers asked Fallon where he was going and the purpose of his visit, and asked Fallon if he was carrying drugs, large sums of money, or weapons. *Id.* At this point, Fallon was sweating. *Id.* The officers then asked and received permission to search Fallon's backpack, and found nothing incriminating. They then asked for permission to search the briefcase containing the *res* at issue, but Fallon told them no. Fallon did, however, tell them that the briefcase contained $50,000 in cash, that it was locked, and that he did not have a key but used a knife to open it. *Id.* The officers then told Fallon to come with them inside the station for additional questioning, and he did so. *Id.* at 760. The officers frisked, photographed and fingerprinted Fallon, and photocopied his tickets and ID. *Id.* The officers requested that police dispatch send a police dog to conduct a sniff search of the briefcase. In response to questions, Fallon gave the officers conflicting explanations about why he had the money, including that he was going to buy a house or artwork, that he had the cash because he had worked as a waiter, and that he had other unnamed investors

whose money was in the briefcase. *Id.* At this point, Romano opened the briefcase and saw that it contained money. *Id.* At some point thereafter, the police dog arrived and gave a positive alert that the briefcase contained drugs or money that had been contaminated with drugs. *Id.* Based on this set of circumstances, I concluded that the search of the briefcase was unlawful because it was not supported by probable cause. *Id.* at 761-62. I further concluded that, because once the officers asked Fallon to leave the train he was in a custodial setting, the statements he made had to be suppressed because the officers had not given him a *Miranda* warning. *Id.* at 762 n.1. I denied the government's motion to reconsider. *United States v. Funds in the Amount of One Hundred Thousand and One Hundred and Twenty Dollars ($100,120.00)*, No. 03 C 3644, Order at 2 (N.D. Ill. Sept. 21, 2006).

Criminal charges were never filed against either Fallon or Marrocco. Recently, Fallon and Marrocco filed a motion for return of property. I denied that motion as premature since Fallon and Marrocco had not yet presented any evidence indicating their ownership of the *res. United States v. Funds in the Amount of One Hundred Thousand and One Hundred and Twenty Dollars ($100,120.00)*, No. 03 C 3644, Order at 2-3 (N.D. Ill. Apr. 10, 2007) (hereinafter "*Funds II*"). Fallon and Marrocco responded by filing the present motion, along with an affidavit from Marrocco stating that he is the lawful owner of the *res* and that it represents a portion of his savings from lawful employment. (Pls'. Mot. for Return of Prop. Ex. B.) Their motion contends that it is "undisputed" that Fallon

4

was a "mere possessor" of the *res* and that, because Marrocco has claimed ownership of the *res*, he is legally entitled to the *res*. (Pls'. Mot. for Return of Prop. at ¶¶ 10-14.)

II.

Under the forfeiture statute the government seeks to apply to seize the *res* at issue:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [subchapter I of Chapter 13 of Title 21]

are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6). Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1), the government must show by a preponderance of the evidence that the present *res* is subject to forfeiture. Section 983 also requires that, in cases such as this one where the government's theory of forfeiture is that the money to be forfeited was "used to commit or facilitate the commission of a criminal offense," the government must "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(1); *see also United States v. Funds in the Amount of Thirty Thousand Six Hundred and Seventy Dollars ($30,670.00)*, 403 F.3d 448, 454 (7th Cir. 2005) (explaining standard for civil forfeitures initiated after the passage of CAFRA). It is only after the government meets its burden that the burden shifts to the

5

claimant to prove that the property is not subject to forfeiture. *United States v. All Assets and Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1188 (7th Cir. 1995) (citation omitted) (decided under lower pre-CAFRA "probable cause" standard); *United States v. One 1991 Chevrolet Corvette, VIN: 1G1YY3385M5109893*, 895 F. Supp. 210, 211-12 (N.D. Ill. 1995)(same). Even if the government is not able to meet its burden, however, the claimants still must demonstrate lawful entitlement to the property. *See, e.g., Alli-Balogun v. United States*, 281 F.3d 362, 371-72 (2d. Cir. 2002) (decided under pre-CAFRA standard).

III.

The claimants' motion asks me to find that Marrocco is the lawful owner of the *res* and that Fallon has a lawful possessory interest in the *res*. The government argues that it is the lawful owner and that the evidence shows that the *res* is subject to forfeiture. Its arguments center around the contention that, although I quashed the seizure and excluded evidence obtained as a result of the seizure (including the results of the sniff test performed by the police dog), this evidence is still admissible to determine whether Marrocco is the lawful owner. I agree with the government that I may not simply return the *res* to Fallon, because he is only asserting a possessory interest in the *res*. That interest is good only against all others but the rightful owner of the property. *See Reliance Ins. Co. v. AL E. and C., Ltd.*, 539 F.2d 1101, 1105 (7th Cir. 1976) (relying on Indiana law); *U.S. v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir.

6

1987)(citing *Reliance*). Unless the government can prove that the *res* is subject to forfeiture, the rightful owner of the *res* appears to be Marrocco, since he asserts that he is the lawful owner and no other claimant has appeared. Therefore, I must consider whether the government has met its burden of proof to seize the *res* from Marrocco.

Here the government contends that it has met its burden of proof to show that the *res* was involved in drug trafficking because of the evidence uncovered when the task force stopped Fallon at Union Station, specifically that (1) Fallon initially lied about the briefcase containing money; (2) Fallon acted nervous; (3) Fallon gave the task force conflicting explanations for why he had the money; and of course (4) the drug detection dog alerted to the briefcase containing the *res*. In a case similar to this one, a case that the government cites throughout its response, the Seventh Circuit addressed the propriety of summary judgment in a civil forfeiture case. *Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 450-53. In that case, the authorities seized the money at issue after the claimant was stopped at the airport, initially lied to the authorities about carrying a large amount of currency, and then gave an improbable explanation for why he was carrying currency and how he had obtained it. *Id.* The authorities subsequently used a drug detection dog to conduct a sniff test on the seized currency and the dog alerted to a plastic bag containing the seized money. *Id.* at 451. The Seventh Circuit noted that under these facts, "the propriety of this forfeiture case turns on

7

the dog alert evidence" because without that evidence "the government cannot possibly link [the money at issue] to illegal narcotics activity." *Id.* at 453. The same is true here. The government has presented no evidence that would establish a "substantial connection" between this *res* and narcotics trafficking other than the purported results of the drug detection dog's "sniff test" of the currency.[1] Therefore, it is the admissibility of this evidence as to Marrocco that I must consider.

This leads to the critical question of Marrocco's standing to assert a Fourth Amendment challenge to the government's seizure of the *res*. Claimants' motion for a determination of ownership of the *res* assumes, as does their reply, that this evidence must be suppressed as to both Marrocco and Fallon. The government contends in its response that Marrocco lacks standing to object to the introduction of the drug detection dog's sniff test because "Fourth Amendment rights are personal rights that cannot be vicariously asserted." (Gov't's Resp. at 2-3 (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Henning v. O'Leary*, 477 F.3d 492, 495 (7th Cir. 2007); *United States v. Williams*, 951 F.2d 853, 856 (7th Cir. 1992)).) However, these cases do not preclude Marrocco

---

[1] The Seventh Circuit noted in *Thirty Thousand Six Hundred Seventy Dollars* that it, like other circuits, had previously questioned the validity of drug dog detection evidence. 403 F.3d at 456 (collecting cases, including *United States v. $506,231 in United States Currency*, 125 F.3d 442, 453 (7th Cir. 1997)). However, the Seventh Circuit explained that "[t]he conclusions reached in these cases rest on uncritical adoption of the currency contamination theory," the theory that nearly all currency is contaminated with narcotics, and that courts have recently become more open to drug detection dog evidence. *Id.* at 459-60.

8

from asserting a claim. The motion to suppress was filed by both Marrocco and Fallon. At the evidentiary hearing on the motion to suppress, claimants' counsel identified himself as representing both claimants, and the government did not indicate at that time that it believed the motion was on behalf of only Fallon. Further, my written memorandum order and opinion granting the motion to suppress indicated that I was granting the motion of both claimants, and the government did not contest this conclusion at that time.

Seventh Circuit precedent concerning the Fourth Amendment confirms that Marrocco has standing to challenge the drug detection dog's sniff test, so that this evidence should be suppressed as to him as well as Fallon. The cases cited by the government merely confirm that a person may bring a Fourth Amendment claim only where his own Fourth Amendment right has been violated. *See United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (citing *United States v. Salvucci*, 448 U.S. 83, 85 (1980)). A person asserting a Fourth Amendment claim must show that he has a privacy interest both in the good seized and in the area where the good was found. *Id.*[2] Marrocco's Fourth Amendment claim satisfies these requirements. As the court held in *United States v. $90,178.20 United States Currency*, No. 05-C-0538-C, 2006 WL 3025614 (W.D. Wis.

---

[2]A reasonable expectation of privacy is infringed when (1) a person exhibits an actual or subjective expectation of privacy and (2) the expectation is one that society is prepared to recognize as reasonable. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)).

9

July 20, 2006), the relevant "area" where the good is found in "closed container" cases is the container, and not the location where it was seized. *Id.* at *2 (finding owner of money stored in closed ammunition cans in a neighbor's basement had an expectation of privacy in the cans and the money). In *United States v. Basinski*, 226 F.3d 829 (7th Cir. 2000), the Seventh Circuit quoted with approval language from the Eleventh Circuit that, because a briefcase serves as a "pocket" in which personal items are frequently carried, "[f]ew places outside one's home justify a greater expectation of privacy than does the briefcase." *Id.* at 834-35 (quoting *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (finding that third party consent may not be inferred when third party consents to search of locked briefcase to which third party does not have the combination)). As the court noted in *$90,178.20*, the ruling in *Basinski* supports the conclusion that a person does not lose his expectation of privacy by placing his personal effects in a closed container and "exposing the outside of the container to the public or by entrusting the container to a third party." 2006 WL 3025614, at *2 (citing *Basinski*, 226 F.3d at 834; *United States v. Rodriguez*, 888 F.2d 519, 523 (7th Cir. 1989); *United States v. Karo*, 468 U.S. 705, 726 (1984) (O'Connor, J., concurring)). *$90,178.20* and the cases upon which it relies are all cases in which the closed container was found in a building, but these rules apply equally to the present case. The Seventh Circuit has affirmed that individuals have a privacy interest in luggage that accompanies a person in transit on a train. *See United States*

*v. McDonald*, 100 F.3d 1320, 1324-25 (7th Cir. 1996) (citations omitted).

Marrocco testified in his deposition in this case that he gave Fallon both the briefcase that the task force seized as well as the cash inside of it. (Marrocco Dep. at 16-17, 32.) He testified that he placed the money in the briefcase at the time he gave both to Fallon, and that the briefcase has a lock but that he did not have a key and so opened the briefcase with "a pen or a paper clip or anything." (*Id.* at 32.) He further testified that he gave the money to Fallon for him to place it in a safe deposit box in Seattle for him. (*Id.* at 33.) Although the government has generally disputed the accuracy of Marrocco's statements, they have provided no contradictory evidence that it was not Marrocco's bag and money that they seized. As part of my findings of fact concerning the motion to suppress, I found that when the task force seized the bag it was in Fallon's train compartment with him, and that the bag was locked and the task force officer had to use a knife to pry it open. *See Funds I*, 361 F. Supp 2d. at 759-60.

Applying the Fourth Amendment standards to these facts, it is clear that Marrocco had an expectation of privacy in the briefcase and the money he gave to Fallon, so he has standing to assert a Fourth Amendment claim for the search of the briefcase through the sniff test conducted by the drug detection dog. Here, he gave a closed and locked briefcase containing his personal property to Fallon to take to Seattle to deposit for him. He did not relinquish his ownership interest in the money. Although Marrocco

11

had less of a privacy interest in the bag since he gave it to Fallon knowing Fallon would take it on a train, *see McDonald*, 100 F.3d at 1325 (citations omitted), Fallon kept the briefcase with him in a private compartment and not on a luggage rack or other publicly-available area of the train. The government has cited no cases that would support the conclusion that Marrocco lost his privacy interest in his briefcase or the money inside when he gave them to Fallon to take by train with him to Seattle. The cases the government does cite in its brief merely stand for the proposition that a person asserting a Fourth Amendment claim must be asserting a personal and not a vicarious right. *See Alderman*, 394 U.S. at 174 (holding individual had no Fourth Amendment right to object to surveillance of a conversation in which the individual was not a participant); *Henning*, 477 U.S. at 495 (holding that the parents and daughter of a man who was killed by police during a traffic stop had no Fourth Amendment right arising out of the stop so that they could not bring an excessive force claim on their own behalf); *Williams*, 951 F.2d at 856 (holding defendant had no Fourth Amendment right to object to the seizure of a note she gave to her brother because she intended to "give her possessory and ownership interest in the note to her brother" and "[t]here is no indication . . . that she wanted him to return the note"). Here, Marrocco is clearly asserting his own interest.

Given this conclusion, my ruling that the task force violated Fallon's Fourth Amendment right by opening the briefcase and conducting a sniff test of its contents before it had obtained a

warrant applies equally to Marrocco. Consequently, evidence of the sniff test results must be suppressed as to Marrocco as well as to Fallon. Without this evidence, the government has presented no evidence from which I could find a "substantial connection" between the money seized and narcotics trafficking, so it cannot establish that the *res* is subject to forfeiture. 18 U.S.C. § 983(c)(1); *see also Funds in the Amount of Thirty Thousand Six Hundred and Seventy Dollars*, 403 F.3d at 454.

IV.

The government also argues that even if it has not met its burden to show that the *res* is subject to forfeiture, Marrocco has still failed to demonstrate lawful entitlement to the property as required. *See Alli-Balogun*, 281 F.3d at 371-72.[3] This is because, as other circuits have concluded, even if a court does not find the property forfeited, "the government can still quiet title to the property in 'a civil equitable proceeding based upon a Rule 41(e) or equitable civil motion brought by one who alleges a lawful right to possession.'" *Id.* at 371 (citing *Clymore*, 245 F.3d at 1200). In this instance, the government does not have the presumptions it would have in a forfeiture proceeding, but instead a claimant "must only prove a right to lawful possession of the property and an

---

[3]The Seventh Circuit has not articulated what a claimant must show even if he is successful in opposing forfeiture, but other circuits have concluded, as the Second Circuit did in *Alli-Balogun*, that a claimant still must demonstrate lawful entitlement to the property. *See, e.g.*, 281 F.3d at 371-72 (citing *United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir. 2001)); *Mantilla v. United States*, 302 F.3d 182, 187 (3d Cir. 2002) (citing *Clymore*, 245 F.3d at 1200).

13

equitable right to its return, and no presumption exists in favor of the government." *Id.* In such a proceeding, the government must still establish that it is entitled to ownership of the property under 21 U.S.C. § 881(a)(6), meaning that the property is proceeds traceable to illegal drug transactions. *Id.* at 371-72 (citing *Clymore*, 245 F.3d at 1200). The burden on the claimant to show a lawful right to possession in such a situation is minimal, because "the person from whom the property was seized is presumed to have a right to its return." *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999).

Here, the government contends that evidence it obtained during discovery from Marrocco's answers to interrogatories and his deposition show that Marrocco cannot establish that he lawfully obtained this money. He testified in his deposition that he obtained the *res* by saving money since he was seventeen years old, including money from past salaries. (Marrocco Dep. at 11-13.) Based on the government's calculation of his salaries over the years, minus Marrocco's own estimate of his living expenses, the government contends that it is impossible for Marrocco to have lawfully accumulated this amount of money. (Gov't's Resp. at 6-7.) Even were I to agree with the government that there are some questions about Marrocco's accounting, the governments's argument is unavailing. While coupled with evidence that connected this *res* with narcotics trafficking, Marrocco's failure to adequately explain how he lawfully earned the *res* might support a finding that he was not the lawful owner, without such evidence it does not.

14

Without any evidence connecting the money to narcotics trafficking, the court has no evidence before it to sufficiently refute Marrocco's deposition testimony in which he testified that the *res* belonged to him, along with the affidavit, however conclusory, that he is the lawful owner of the *res*. Under these circumstances, the Fourth Amendment still applies to determine the rightful ownership of the property through an equitable civil motion, so I may not consider the results of the sniff test. *See, e.g., Clymore*, 245 F.3d at 1200 (person whose constitutional right against illegal search and seizure has a superior interest to the government in § 881(a) property). Since no other individuals have come forward to assert an ownership interest in the *res*, I must conclude that it belongs to Marrocco, and that he has an equitable right to its return.[4]

V.

There also remains the issue of attorneys' fees and costs and post-judgment interest. In the claimants' initial motion for return of property, claimants sought attorneys' fees under 28 U.S.C. § 2465, and I indicated in my order denying that motion as premature that I would consider their request at a later time. *Funds II*, No. 03 C 3644, Order at 2-3. In the government's response to the present motion it argues that claimants should not

---

[4] Claimants' motion seeks a finding that not only is Marrocco the lawful owner, but that Fallon has a possessory interest in the property. Since I need not make a specific finding as to Fallon's interest in order to find that Marrocco is the lawful owner, and since a finding that Marrocco is the lawful owner returns the *res* to him and not to Fallon, I decline to do so.

15

receive fees or costs because there was reasonable cause for the seizure of the *res*. (Gov't's Resp. at 8.) Under 28 U.S.C. § 2465, with certain exceptions in any civil forfeiture proceeding where the claimant substantially prevails, the government is liable for reasonable attorneys' fees and costs. 28 U.S.C. § 2465(b)(1)(A). However, subsection (a) provides that even upon entry of judgment for the claimant

> if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).

28 U.S.C. § 2465(a)(2).

Although the government contends that the issuance of a certificate of reasonable cause under § 2465(a)(2) means that the claimant are not entitled to costs, § 2465(a)(2) provides that the certificate of reasonable costs means the claimant is not entitled to costs "except as provided in subsection (b)." *Id.* Subsection (b) states that the government is liable for reasonable attorneys' fees and costs where the claimant substantially prevails. 28 U.S.C. § 2465(b)(1)(A). Therefore, even were I to issue a certificate of reasonable cause, it would not necessarily prevent me from awarding claimants reasonable attorneys' fees and costs.

Regardless, there is no basis to issue a certificate of reasonable cause in this case. Although the Seventh Circuit has not addressed this issue, numerous courts have concluded that

"reasonable cause" under § 2465 is synonymous with probable cause; a certificate therefore only issues where the seizing entity had probable cause for the seizure but it later turns out that the property was not actually subject to forfeiture. *See, e.g.*, *United States v. One 1986 Ford Pickup, CA License No. 2W03753, VIN 2FTJW36L6GCA99688*, 56 F.3d 1181, 1186 (9th Cir. 1995) (citing *Stacey v. Emery*, 97 U.S. 642, 646 (1878); *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir. 1994); *United States v. 255 Broadway*, 9 F.3d 1000, 1006 n. 9 (1st Cir. 1993)). In this case, although I concluded that the task force lawfully detained the *res* for further investigation, I specifically held that the task force lacked probable cause to open the briefcase. *Funds I*, 361 F. Supp 2d. at 761. Therefore, I will not issue a certificate of reasonable cause.

Furthermore, I find that Marrocco has substantially prevailed and therefore is entitled to reasonable attorneys' fees and costs as well as post-judgment interest. *See* 28 U.S.C. § 2465(b)(1)(A) & (B). I will allow him to file an appropriate petition demonstrating these expenses and interest so that I may determine an appropriate award.

VI.

For the above reasons, I grant claimants' motion insofar as it seeks a declaration that Marrocco is the lawful owner of the *res* at issue in this case. The government shall return the *res*, funds in the amount of one hundred thousand and one hundred and twenty dollars, to Marrocco. The transfer of the *res* shall take place

17

within the next 90 days in a manner convenient to both the government and Marrocco, absent an appeal of this order. I also award Marrocco interest and costs as appropriate under 28 U.S.C. § 2465. I will allow him 21 days to file a petition for attorneys' fees, costs and interest to determine the amount to which he is entitled.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 5, 2007