IN THE
UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.   03 C 3644 |
| | ) | |
| FUNDS IN THE AMOUNT OF ONE, | ) | The Honorable John J. Tharp, Jr., |
| HUNDRED THOUSAND AND ONE | ) | District Judge, Presiding |
| HUNDRED TWENTY DOLLARS | ) | |
| ($100,120.00 U.S.C.), | ) | |
| Defendant. | ) | |
| | ) | |
| NICHOLAS P. MARROCCO, and | ) | |
| VINCENT J. FALLON, | ) | |
| Claimants. | ) | |

**CLAIMANTS' *DAUBERT* OBJECTIONS TO PLAINTIFF'S POTENTIAL OPINION TESTIMONY**

NOW COME Claimants, NICHOLAS P. MARROCCO and VINCENT FALLON, by and through their attorney, STEPHEN M. KOMIE of KOMIE AND ASSOCIATES, and in support of their *Daubert* Objections, state as follows:

**I. Statement of Facts**

1. Claimants have contemporaneously filed a motion in *limine* to bar evidence related to a purported dog sniff. Due to the similarities in the subject matter, Claimants incorporate the substance of the allegations in their motion in *limine* herein.

2. On December 6, 2002, law enforcement officers encountered an individual by the name of Vincent Fallon on a train at Union Station in Chicago. *United*

*States v. Funds in the Amount of One Hundred Thousand One Hundred and Twenty Dollars* ($100,120.00), 730 F.3d 711, 713 (7th Cir. 2013). After briefly questioning Fallon, the officers instructed Fallon to accompany them back to their office with his luggage. (*Id.*) The details of the initial encounter and conversation are not relevant to the instant motion. The subsequent facts are.

3. Once at the office, Officer Romano used a pocket knife to open the briefcase and discovered that it contained bundles of money. (*Id.*) Romano then shut the briefcase. (*Id.*) Officer Sterling Terry (Romano's partner) then called a police dispatcher and requested that a police dog (the "canine unit") be brought to the office to conduct a sniff search of the briefcase. (*Id.*) The dog and its handler, Chicago Police Officer Richard King arrived shortly thereafter. (*Id.*)

4. Assisting Officer Terry testified that Officer King (the dog handler) was shown the briefcase and where it was sitting when he arrived on the scene. (TR. at 86.)[1] King testified he was aware the briefcase contained "suspect narcotics transaction money," before he retrieved Deny to conduct the sniff-search. (TR. at 12.)

5. King then returned with Deny to a room where he had performed searches with Deny on previous occasions. (TR. at 14.) King testified Deny started

---

[1]Citations to "TR. at __ " refer to the transcripts of the evidentiary hearing on the Motion to Suppress, conducted April 26-27, 2004. R. 43; 44.

searching the perimeter walls of the room before making his way over to the briefcase. (TR. at 15.) King then testified Deny began pulling and biting at the briefcase. (*Id.*) King testified that the briefcase was not secreted in a cabinet, but rather was located in an accessible area. (TR. at 15-16.)

6. Romano testified differently; he stated that he took the briefcase and secreted it inside a filing cabinet. (TR. at 198.) Romano testified that when King and Deny entered the room, Deny was on a leash, which King released. (TR. at 199.) After Deny was let off the leash, Romano testified the dog went straight to the cabinet where the briefcase was secreted and started scratching on it. (*Id.*) According to Romano, Deny did not search around the perimeter of the room at any time. (*Id.*) Romano testified that Deny never touched the briefcase with either it's paws or mouth. (TR. at 200.)

7. According to Officer Terry's testimony, the drug sniffer dog has always alerted positively to currency subjected to a sniff test at the Amtrak Police Office. (TR. 136-37; Doc. 211 at 45, ¶24) This was later admitted by the government. (Doc. 211 at 45, ¶25) According to the government, there were 86 occasions between fiscal years 2002 through 2007 in which a drug sniffer dog was utilized at Union Station to sniff test currency. (*Id.*). Of the 86 occasions, the drug sniffer dog alerted positive on the currency 100% of the time. (*Id.*)

8. In any event, after the sniffer dog allegedly alerted to the briefcase, the currency was removed from the briefcase, sealed into evidence bags, and

sent to a bank to be counted. There is no dispute that the Defendant *Res* was destroyed by the government, *i.e.*, the actual funds were deposited and no longer available for inspection by Claimants. (TR. 91-92.) Further, as the Seventh Circuit noted the currency is unavailable for scientific testing.

9. During discovery and subsequent motion practice, the government has tendered documents relating to Deny's training and field performance, amongst other discovery. Further, Plaintiff has filed at least two affidavits executed by Deny's handler, Officer Richard King. Affidavits attached as Exhibits A and B.

10. It is expected that Plaintiff will offer the testimony of Handler Richard King and his speculation about Deny's behavior on or about December 6, 2002. Claimants object to the admission of any evidence concerning Deny's purported "sniff test" on December 6, 2002.

11. Plaintiff has not designated an additional expert to testify to their theory of the case, *i.e.*, that a positive dog alert to currency is probative of whether the currency was recently in contact with narcotics. Nevertheless, Claimants are requesting this Court to bar the introduction of any evidence of the so-called Furton theory, which will be addressed below.

## II. Law Applicable

12. That the government seeks to forfeit the Defendant *Res* pursuant to 21 USC § 881(a)(6).

13. Section 881, provides, in pertinent part,

    All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

    *Id.*

14. The government has not produced and cannot produce a competent witness to testify the Defendant *Res* was:

    a.  furnished or was intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Section 881;

    b.  traceable to such an exchange described above; and/or

    c.  used or was intended to be used to facilitate any violation of Section 881, whatsoever.

15. That because the government does not have any direct evidence of one of the three elements described above, the government intends to rely on circumstantial evidence *via* opinion testimony to establish this alleged connection.

16. Therefore, Federal Rule of Evidence 702 governs the admissibility of any opinion testimony the government intends to introduce in this case. Said rule provides,

    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

17. That specifically, the government intends to use a purported dog sniff as the only evidence of a connection between narcotics and the Defendant *Res*.

18. That as the proponent of the evidence, Plaintiff has the burden to demonstrate the evidence's admissibility.

## III. Analysis

19. In prior motion practice, Plaintiff has alleged "Deny" alerted to the briefcase Mr. Fallon had been carrying. And the briefcase contained the Defendant *Res*.

20. This Court made the following factual findings when it decided Claimants' motion to suppress,

    The patrol officer with the dog, 'Deny,' arrived someplace between 2:25 p.m. and 3:00. None of the witnesses (who also included Deny's handler, Officer Richard King), agreed on this point. It was not, however, more than an hour after the encounter on the train. Officer King told Officer Romano to hide the briefcase in another room, which was done. Deny found the bag and gave a positive alert that it contained drugs or money that had been contaminated with drugs. Deny was not asked to sniff any of the 19 bundles of money found in the bag. The money was later taken to a bank and deposited with other money.

    *United States v. $100,120.00,* 361 F.Supp.2d 757, 760 (N.D.Ill. 2005).

6

21. Plaintiff has alleged the canine alert means the sniffer dog "alerted to the presence of the odor of an illegal drug coming from the briefcase containing the seized currency."

22. Plaintiff has produced an affidavit(s) from the dog's handler, Officer King, attesting to his opinion of Deny's reaction to the briefcase, King's interpretation of Deny's reaction, and King's opinion of his interpretation of Deny's purported reliability.

23. Plaintiff has never produced any evidence that Officer King is an expert in canine olfaction, scientific statistical analysis, or the chemical composition of any illegal narcotics allegedly contaminating the briefcase.

24. Plaintiff nevertheless claims, Officer King's interpretation of the sniffer dog's purported alert "establishes that the source of the funds was from illegal drug transactions."

25. Thus, it appears Plaintiff intends to argue that Deny's alleged positive alert to the briefcase indicates the currency contained therein, recently, or just prior to packaging, had been in close or actual proximity to a significant amount of narcotics, and is not the result of any alleged innocent environmental contamination of circulated U.S. currency by traces of narcotics.

26. Plaintiff's claims regarding Deny's purported alert amount to equating a sniffer dog's sense of smell with a scientific test, which can conclusively establish the presence of an unknown controlled substance.

7

27. Additionally, Plaintiff has relied upon a certain theory propounded by Dr. Kenneth Furton and others, which proposes that under *laboratory conditions*, a positive dog alert to currency can suggest that the currency has been in the presence of cocaine in the recent past. The theory does not account for a multitude of other factors which could lead to a positive dog alert, including, but not limited: poor and inadequate training; poor deployment techniques; poor test conditions; handler cueing; or even the presence of trace amounts of other narcotics on the currency. It is believed that Plaintiff will attempt to offer evidence based on the so-called "Furton" or "Two hour" theory.

28. Conversely, Claimants have produced a mountain of expert evidence that the Furton Theory is completely, scientifically invalid. *See* Motion in Limine to Bar Dog Sniff Evidence at ¶38. Moreover, Claimants have produced substantial evidence that Deny's alleged alert could have been based on a many other facts. *See e.g., id.* at ¶¶36-37.

29. The United States Supreme Court has held, district courts are to be gatekeepers regarding the admissibility of opinion or scientific testimony. *Daubert v. Merrill Dow Pharmaceuticals. Inc.,* 509 U.S. 579 (1993).

30. That factors a district court should consider when determining whether scientific evidence should be admitted are: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or

8

potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *Deputy* v. *Lehman Brothers.* 345 F.3d 494, 505 (7th Cir. 2003), citing *Daubert,* at 593-94.

31. That applying the factors listed in *Daubert* this Court should bar the introduction of any evidence relating to Deny's purported alert.

32. That the government has not produced evidence that a positive canine alert to U.S. currency indicates the currency had recently, or just prior to packaging, been in close or actual proximity to a significant amount of narcotics; or that such a theory has been tested.

33. That the government has not produced any evidence that the purported sniff test by Deny of the subject *Res* has been tested.

34. That the government has not produced any evidence that Officer King has any scientific training or experience on the ability and effectiveness of dogs to identify narcotics on U.S. Currency.

35. That Officer King's affidavit fails to aver his training, methodology, or certification techniques have been tested in order to determine their reliability.

36. That the government does not know and has not provided any evidence of Deny's rate of false positive alerts to currency in the field. Therefore, Deny's error rate as to currency sniff tests in the field is unknown.

37. That the government fails to provide any literature (or other documentation) to show that the government's theory as to narcotic residue contamination has achieved "general acceptance" in the expert community.

38. That the government's theory as to narcotic residue contamination is so unreliable that at a minimum, this Court must hold a *Daubert* hearing prior to allowing the government to introduce evidence pertaining to the alleged dog sniff.

39. Therefore, this Court should grant Claimants' motion for a *Daubert* hearing prior to allowing Officer King to testify regarding the alleged dog sniff and require Plaintiff to prove that its theory relating to the probative value of the dog sniff survives *Daubert*.

40. That in addition, this Court should grant a *Daubert* hearing because the government failed to preserve the Defendant *Res*. The need for a hearing on the government's theory is especially acute in this case because the government intentionally destroyed the *Res*.

41. That as this Court found, once the Defendant *Res* was seized it was immediately deposited it into a general account, without a court order to destroy the *Res*. The government did not attempt to preserve the evidence for trial or further testing. By destroying the Defendant *Res*, Claimants have been denied an opportunity to conduct an independent analysis of the currency.

42. That if the government had seized an actual controlled substance from Claimant Fallon, it is unquestionable that the government would have preserved the evidence. It would have then sent a sample of the evidence to a crime lab to have a scientific analysis conducted to determine conclusively what the substance was. Obviously, in that case, Claimants would have had the opportunity to have their independent scientific tests conducted to ensure the substance was actually a controlled substance.

43. That currency is no different. The currency and the purported dog sniff is the primary evidence the government intends to use against Claimants. Scientific testing using gas chromatograph mass spectrometers could have determined the amount of narcotic residue on the currency. Nevertheless, the government intentionally destroyed the evidence as it does in every currency forfeiture case.

44. Therefore, this Court should grant Claimants motion for a pre-trial *Daubert* hearing in order to ensure the testimony presented to the jury is reliable and relevant.

WHEREFORE, Claimants respectfully pray this Court to grant Claimants' motion for a *Daubert* hearing regarding the introduction of the alleged dog sniff and its meaning prior to the commencement of the jury trial in this case.

                                      Respectfully submitted,

                                      NICHOLAS MARROCCO and
                                      VINCENT FALLON, Claimants
                                      By and through their attorneys
                                      KOMIE AND ASSOCIATES

                          By:     /s/ Stephen M. Komie

Stephen M. Komie
Komie and Associates
One North LaSalle Street, 42nd Floor
Chicago, IL 60602
312.263.2800

12